**[Cite as *State v. Kopchak*, 2026-Ohio-2684.]**

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. CT2025-0121 |
| Plaintiff - Appellee | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Muskingum County, Case No. CR2025-0473 |
| TODD A. KOPCHAK, | |
| Defendant - Appellant | Judgment: Reversed and Remanded |
| | Date of Judgment: July 13, 2026 |

BEFORE: Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Joseph A. Palmer (Muskingum County Assistant Prosecuting Attorney) Zanesville, Ohio, for Plaintiff-Appellee; Christopher D. Brigdon, Thornville, Ohio, for Defendant-Appellant.

*Gormley, J.*

{¶1} Defendant Todd Kopchak argues in this criminal appeal that the State failed at his trial to present sufficient evidence to support his conviction on a felony charge of failing to register as a sex offender. Kopchak argues, too, that his conviction was against the manifest weight of the evidence. As we explain below, we agree with Kopchak that his conduct did not amount to a violation of the failure-to-register provision in R.C. 2950.04(E), and we therefore vacate his conviction on the failure-to-register charge.

{¶2} We note, too, that the trial judge mistakenly imposed a definite — rather than an indefinite — prison term for Kopchak's conviction on a separate first-degree-felony charge of failing to provide notice of a change of address. Because R.C. 2929.14(A)(1)(a) requires that any prison term for that type of offense be an indefinite prison term — given that the

crime's offense date was after March 22, 2019 when Ohio shifted back to indefinite prison terms for first- and second-degree felonies — we remand the case for a resentencing hearing.

**The Key Facts**

{¶3} Kopchak was obligated to register as a tier-III sex offender as a result of his 2017 convictions on two counts of rape. Kopchak — after his 2017 sentencing hearing — registered as a sex offender in Muskingum County and then began serving an eight-year prison term. He was released from prison on April 10, 2025.

{¶4} According to testimony presented at Kopchak's 2025 failure-to-register trial in the case before us, Kopchak went to the county sheriff's office in Muskingum County on April 11, 2025 to fulfill his post-prison sex-offender-registration obligation. Detective Morton in that office collected Kopchak's registration information, and then Kopchak was sent on his way with a document that Morton referred to at the trial as a "duty letter." In that letter was some information about Ohio's sex-offender-registration process, including Kopchak's obligation to verify his registration information every 90 days. The letter also instructed Kopchak to reappear at the sheriff's office on July 8, 2025 to verify his information.

{¶5} According to his own testimony at the trial, Kopchak's housing situation changed after his April meeting with the detective, when an altercation at his home forced him to find new housing. On June 13, 2025, Kopchak returned to the sheriff's office and spoke then with a different detective — Detective Perry — so that Kopchak could update his address information to his new status, which Kopchak described on that day and at the trial as "homeless." Once Kopchak had shared that new status with Detective Perry, Kopchak was sent on his way that day with another duty letter, and that letter again stated that Kopchak was to appear at the sheriff's office on July 8, 2025 to fulfill his 90-day address-verification

obligation. Perry in turn testified at the trial that he informed Kopchak during the June meeting that, because Kopchak no longer had a fixed residential address, Kopchak was required to call the sheriff's office daily and leave a voicemail message detailing just where he planned to stay each night. According to Detective Morton's trial testimony, Kopchak rarely left those messages between June 13 and July 8.

{¶6} Kopchak did not appear at the sheriff's office on July 8, 2025. Detective Morton testified that his attempts to contact Kopchak starting the next day were unsuccessful until July 10, when Kopchak called and spoke with Morton. That phone call was recorded, and the recording was played for the jury at Kopchak's trial. Kopchak stated during the call that he had been staying in Wayne National Forest.

{¶7} After speaking with the detective by phone on July 10, Kopchak appeared in person at the sheriff's office that same day, and he reiterated that he had been sleeping outdoors in Wayne National Forest for the past week.

{¶8} Soon thereafter, Kopchak was indicted on two first-degree-felony charges: (1) failure to register (a violation of R.C. 2950.04(E)), and (2) failure to provide notice of a change of address or change of vehicle information (a violation of R.C. 2950.05(F)(1)). For both charges, the offense date was alleged to be between June 13, 2025 and July 10, 2025.

{¶9} The jury empaneled to hear the case found Kopchak guilty on both charges. At Kopchak's sentencing hearing, the trial judge, on the failure-to-register charge, imposed a mandatory indefinite prison term with a minimum length of 11 years. On the other charge, the trial judge imposed a mandatory 11-year definite prison term. Kopchak now appeals, raising sufficiency and manifest-weight challenges to the failure-to-register conviction only.

## Kopchak's Conviction Under 2950.04(E) Is Not Supported By Sufficient Evidence

{¶10} Because we agree with Kopchak that the State failed to present sufficient evidence to prove that he violated R.C. 2950.04(E), we focus today on that issue only. *See State v. Short*, 2017-Ohio-7200, ¶ 22 (2d Dist.) ("Where there is insufficient evidence to support a conviction, it will also necessarily be against the manifest weight of the evidence").

{¶11} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶12} Kopchak was charged in count one of the indictment with a violation of R.C. 2950.04(E). To secure a conviction on that charge, the State was required to prove that: (1) between June 13, 2025 and July 10, 2025, Kopchak was required to register as a sex offender under divisions (A) and (B) of R.C. 2950.04; and (2) Kopchak failed to register as required by those provisions. (R.C. 2950.04(E) also criminalizes a sex offender's failure to send a notice of intent to reside under division (G), but nothing in the record or the parties' appellate briefs suggests that that kind of notice is relevant in Kopchak's case.)

{¶13} The parties agreed — and told the jurors — that Kopchak was required to register as a sex offender, so the focus at trial on the failure-to-register charge was simply whether Kopchak had failed to register in accordance with R.C. 2950.04(A) and R.C. 2950.04(B) between June 13, 2025 and July 10, 2025.

<u>The State Did Not Present Sufficient Evidence to Prove That Kopchak Failed to Register as Required by R.C. 2950.04(A) and R.C. 2950.04(B).</u>

{¶14} R.C. 2950.04(A)(1) sets forth Ohio's sex-offender-registration requirements for persons who have been convicted of committing any of various sexually oriented offenses and who have been ordered by a trial court to serve a term of confinement. When a person is convicted of a sexually oriented offense and is sentenced to serve a prison term, that offender, immediately after his or her sentencing hearing and before being transferred to the custody of the prison, must, according to R.C. 2950.04(A)(1)(a), "register personally with the sheriff . . . of the county in which the offender was convicted of . . . the sexually oriented offense." Subsection (d) then instructs the offender to again register — this time, typically in his or her county of residence — once he or she is released from prison. R.C. 2950.04(A)(1)(d).

{¶15} R.C. 2950.04(B) lists the steps that a sex offender must complete — both in connection with the initial heading-off-to-prison registration and for the post-prison county-of-residence registration — to comply with the R.C. 2950.04(A) registration obligations. According to the statute, the offender must personally obtain from the sheriff a registration form that complies with R.C. 2950.04(C)'s requirements, must complete and sign the form, and must return the completed form, be photographed, and provide any other required information to the sheriff. (R.C. 2950.04(C) calls for each registering offender to disclose his or her name and any aliases, date of birth, a residential address, any employer's name and address, phone numbers, email addresses, and other information.) Registration is complete

when the offender "returns the form, containing the requisite information, photograph, other required material, signatures, and date, to the sheriff." R.C. 2950.04(B).

{¶16} Evidence presented at Kopchak's trial demonstrates that he fulfilled, in May 2017, his initial R.C. 2950.04(A)(1)(a) heading-off-to-prison obligation to register as a sex offender in Muskingum County. The State introduced an exhibit at the trial showing that Kopchak registered that month in Muskingum County — where he was convicted on two rape charges — before his prison terms on those two charges began.

{¶17} Then according to Detective Morton's trial testimony, Kopchak, one day after he was released from prison, appeared in person on April 11, 2025 at the sheriff's office in Muskingum County to complete his R.C. 2950.04(A)(1)(d) post-prison county-of-residence registration paperwork. As with the pre-prison registration process in 2017, Kopchak in April 2025 fulfilled his post-prison registration obligation by completing the R.C. 2950.04(B) steps that we described above in paragraph 15. Once that registration task was completed on April 11, 2025, Kopchak was told that day to come back to the sheriff's office on July 8, 2025 to fulfill his recurring every-90-days verification obligation.

{¶18} Given that Kopchak evidently did in fact complete his registration obligations under R.C. 2950.04(A) and (B) in both 2017 and 2025, we conclude that the State at the trial failed to present sufficient evidence to prove the alleged failure-to-register offense. Nothing in those provisions imposed on Kopchak any additional registration obligations, and certainly during the alleged-offense date range — June 13, 2025 through July 10, 2025 — he had no further registration obligations beyond those that he had already fulfilled.

<u>There Was a Variance Between Count One of Kopchak's Indictment and the
Evidence That Was Presented at the Trial</u>

**{¶19}** We surmise that the State intended to charge Kopchak in count one of the
indictment not with a failure-to-register offense under R.C. 2950.04(E) but instead with a
violation of R.C. 2950.06(F) (failure to verify a current residence, school, or employment
address) or perhaps, as alleged in count two, with additional violations of R.C. 2950.05(F)(1)
(failure to provide notice of a change of address).

**{¶20}** The State at Kopchak's trial asserted during its closing argument that the
following conduct by Kopchak supported the failure-to-register charge: (1) Kopchak failed to
appear at the sheriff's office on July 8, 2025 to complete his 90-day verification; (2) after
updating his address to "homeless," Kopchak only sporadically phoned the sheriff's office to
report his intended sleeping location each day; and (3) Kopchak failed to provide the kind of
detailed description that the sheriff's office expected whenever he called to discuss his current
sleeping site between June 13, 2025 and July 10, 2025.

**{¶21}** A "variance" in a criminal case is "generally a conflict or disagreement between
the charging instrument" — the indictment, information, or affidavit — and "the proof in a
matter essential to the charge." *State v. Spade*, 2009-Ohio-2004, ¶ 18 (5th Dist.). While a trial
court may, under Criminal Rule 7(D), amend an indictment or other charging document "at
any time before, during, or after" a trial to address "any variance with the evidence," no
change, according to that same rule, can be made to the "name or identity of the crime
charged." *See also State v. Isenogle*, 2022-Ohio-1257, ¶ 32 (5th Dist.) ("This Court has
consistently held that although Crim.R. 7(D) permits most amendments, it flatly prohibits
amendments" that "change the name or identity of the crime charged"); *Spade* at ¶ 19 ("[A]
variance in the proof of the manner of committing a crime that is not even suggested by any

allegations in the charging instrument will necessarily prejudice the accused and require reversal of a conviction based solely upon this varied evidence").

{¶22} Ohio's sex-offender-registration procedures and requirements are of course spelled out in R.C. Chapter 2950. And R.C. 2950.04 — the provision that Kopchak, according to count one of the indictment, allegedly violated — sets forth the circumstances in which an unincarcerated sex offender is required to register with a county sheriff's office. *See* R.C. 2950.04(A)(2)(a) ("[t]he offender shall register personally with the sheriff . . . of the county within three days of the offender's coming into a county in which the offender resides or temporarily is domiciled for more than three days").

{¶23} R.C. 2950.05(A) in turn requires a sex offender who has already fulfilled his or her sex-offender-registration obligation or obligations to provide any change-of-address information "to the sheriff with whom the offender . . . most recently registered the address under division (A)(2) . . . of section 2950.04." And if an offender reports that he or she is not residing at a fixed address, the offender must also include in his or her written notice to the sheriff's office "a detailed description of the place or places at which the offender . . . intends to stay for the next thirty days." R.C. 2950.05(A).

{¶24} Finally, R.C. 2950.06 requires a sex offender to periodically verify a current residence address with a frequency that is dependent on the sex offender's designated tier. A tier-III sex offender like Kopchak is required under that statutory provision to verify his or her current residence address "every ninety days after the offender's . . . initial registration date." R.C. 2950.06(B)(3).

{¶25} Kopchak was charged in count one of the indictment with a violation of R.C. 2950.04(E). The indictment listed R.C. 2950.04(E) as the relevant code section and tracked

the statutory language contained in it. The jury instructions at Kopchak's trial likewise advised jurors that the State was alleging that "on or about the 13th day of June, 2025, to the 10th day of July, 2025, in Muskingum County, Ohio, Todd Kopchak was . . . required to register as a sexually oriented offender, and failed to complete a registration form together with his photograph, and including the fixed residence address or fixed residence addresses" where he intended to reside. And both the jury-verdict form signed by the jurors and the judgment entry memorializing Kopchak's sentence listed R.C. 2950.04(E) as the count-one charge on which he was found guilty.

{¶26} Each of the three code sections described above — R.C. 2950.04, R.C. 2950.05, and R.C. 2950.06 — contain different requirements that sex offenders must abide by. And each section "contains a prohibition against failing to comply with the respective requirement." *State v. Chessman*, 2010-Ohio-3239, ¶ 12 (2d Dist.). Any amendment to the indictment to reflect the correct charge would therefore have effected an impermissible change in both the name and identity of the crime charged in count one of Kopchak's indictment.

{¶27} Further, Kopchak's address update to "homeless" imposed on him no statutory duty to either call or appear at the sheriff's office each night to report where he was staying. *See State v. Ramsey*, 2022-Ohio-3389, ¶ 32 (12th Dist.) ("R.C. 2950.05 does not require individuals who are homeless to report daily to the sheriff's department"); *State v. Llewellyn*, 2021-Ohio-2396, ¶ 29 (5th Dist.) ("[R.C. 2950.05(A)] sets forth no requirement that a homeless individual must report on a daily basis if he has no fixed address").

{¶28} Instead, any alleged change-of-address offenses committed by Kopchak — including any failure on his part to provide to the sheriff's office, under R.C. 2950.05(A), a "detailed description of the place or places" where he was staying while homeless — likely

should have been charged, if at all, under R.C. 2950.05(F)(1). Indeed, Kopchak was in fact charged with committing that kind of offense in count two of the indictment, and the jury found him guilty on that charge.

{¶29} As for any possible failure by Kopchak to comply with R.C. 2950.06's periodic-verification requirement — an allegation he did not face at the trial — no conviction would have been proper in any event.

{¶30} First, the evidence presented at Kopchak's trial does not establish that he failed to verify his address on or before the 90th day after his April 11, 2025 registration date. Under R.C. 1.14, "[t]he time within which an act is required by law to be done" is computed "by excluding the first and including the last day." If we exclude April 11 from our 90-day calculation and instead use April 12, 2025 as the starting date for Kopchak's 90-day window, the 90th day is July 10, 2025, which is when Kopchak did in fact appear at the sheriff's office in Muskingum County to comply with his tier-III verification obligation under R.C. 2950.06(B)(3).

{¶31} And though Detective Morton testified at the trial that his office was in charge of establishing the date when Kopchak was obligated to fulfill his 90-day verification obligation, nothing in R.C. Chapter 2950 empowers a sheriff's office to shorten the verification time periods listed in R.C. 2950.06(B). Kopchak's failure to appear at the sheriff's office on July 8, 2025 — the reporting date mentioned in the two "duty letters" given to Kopchak by detectives in April and June 2025 — was not a crime.

{¶32} Second, R.C. 2950.06(G)(1) requires a sheriff's office to send a written warning letter to an offender's last known residence address regarding the offender's duty to verify his or her current address if the offender fails to timely comply with the verification obligation.

The letter, according to R.C. 2950.06(G)(1)(c), must include language notifying the offender that he or she "has seven days from the date on which the warning is sent" to verify a current residence address. And R.C. 2950.06(G)(2) tells us that an offender may not be prosecuted under R.C. 2950.06(F) for a failure-to-verify offense unless (1) that seven-day period has expired and (2) the offender, prior to the expiration of that seven-day period, fails to verify a current home (or work or school) address. *See also State v. Williams*, 2007-Ohio-3268, ¶ 13 ("the sheriff must fulfill the duty to send a notification to the offender's last known address before a sex offender may be prosecuted for failure to periodically verify a current address under R.C. 2950.06(F)"); *id.* at ¶ 12 (explaining that an offender's homelessness does not excuse a sheriff's office from having to comply with the statute).

{¶33} Kopchak appeared at the sheriff's office on July 10, 2025, which was the date when he was required to fulfill his verification obligation there. Nothing in the trial-court record indicates that a letter like that described in R.C. 2950.06(G)(1) was sent to his last known address before he was indicted on July 16, 2025. Although the State presumably intended to charge Kopchak with a failure-to-verify offense under R.C. 2950.06(F) — rather than the count-one charge of failure to register under R.C. 2950.04(E) — any prosecution for a failure-to-verify offense would evidently have been a nonstarter in light of the sheriff's office's apparent failure to send the warning letter required by R.C. 2950.06(G)(1).

{¶34} In the end, we find that Kopchak's failure-to-register conviction under R.C. 2950.04(E) is not supported by sufficient evidence, and the State, with the evidence presented at the trial, likewise would not have been able to prove that Kopchak committed a failure-to-verify offense under R.C. 2950.06 even had the State amended the charge before, during, or

after the trial. Kopchak's sufficiency and manifest-weight challenges to his failure-to-register conviction are sustained.

{¶35} And as we reiterated recently in a different case, "'when an appellate court reverses for insufficiency of the evidence, the Double Jeopardy Clause bars retrial.'" *State v. Smith*, 2026-Ohio-1803, ¶ 47 (5th Dist.), quoting *City of Girard v. Giordano*, 2018-Ohio-5024, ¶ 10. *See also State v. Burst*, 2025-Ohio-2277, ¶ 23 (9th Dist.) ("because reversal for insufficiency is effectively an acquittal, retrial is prohibited by double jeopardy") (brackets and citation omitted). Kopchak cannot be retried on the failure-to-register charge.

## We Remand Kopchak's Case for a New Sentencing Hearing

{¶36} Kopchak is left, then, with only the count-two failure-to-provide-notice-of-change-of-address conviction. The sentence on that charge, though, contains an error and must be redone.

{¶37} For crimes committed in Ohio on and after the March 22, 2019 effective date of the Reagan Tokes Act, any prison term for most first-degree-felony and second-degree-felony offenses must be, according to R.C. 2929.14(A)(1)(a) and (A)(2)(a), "an indefinite prison term." And of course when sentencing a defendant on multiple counts that each require an indefinite prison term, a trial judge is required to "consider each offense individually and impose a separate sentence for each offense." *State v. Saxon*, 2006-Ohio-1245, ¶ 9.

{¶38} In those circumstances, the sentencing judge must first "select, for each offense, a stated minimum term from the appropriate statutory range" in R.C. 2929.14(A)(1)(a) (for first-degree felonies) or R.C. 2929.14(A)(2)(a) (for second-degree felonies) unless the statutory provision that criminalizes the conduct specifies a different

minimum term or penalty for the offense. *State v. Bryant*, 2022-Ohio-3669, ¶ 68 (8th Dist.). Then, after any prison terms for each offense have been imposed, the judge may consider whether the defendant should serve those prison terms concurrently or consecutively. *Saxon* at ¶ 9.

{¶39} Finally, the judge should then turn to R.C. 2929.144(B) to calculate the defendant's maximum prison term in the case. *See State v. Jenkins*, 2025-Ohio-2143, ¶ 62 (8th Dist.) (Sean C. Gallagher, J., concurring in judgment) (explaining that the maximum prison term in a case is "the aggregate of all stated minimum and definite terms imposed" in the case, plus the so-called "tail, as calculated under R.C. 2929.144(B)(1), (B)(2), and (B)(3)"); *State v. Tornstrom*, 2023-Ohio-763, ¶ 72 (11th Dist.) ("'only one maximum term is calculated'"), quoting *State v. Searls*, 2022-Ohio-858, ¶ 22 (2d Dist.).

{¶40} R.C. 2950.99(A)(1)(a)(ii) — the penalty provision for violations of Ohio's sex-offender registration and verification laws — tells us in relevant part that a violation of a prohibition contained in R.C. 2950.04, 2950.041, 2950.05, or 2950.06 is a felony of the same degree as the most serious sexually oriented offense that formed the basis of the sex offender's obligation to comply with those provisions if the offense that formed that basis was a first-, second-, third-, or fourth-degree felony. Because Kopchak's registration and verification obligations stemmed from his 2017 first-degree-felony rape convictions, both of the R.C. Chapter 2950 charges against him in this case were also first-degree-felony charges.

{¶41} The jury found Kopchak guilty on both charges, but the trial judge imposed a definite prison term — rather than an indefinite one — on the second of those two charges. For the count-one failure-to-register conviction under R.C. 2950.04(E) — which we have now vacated — Kopchak was sentenced to a mandatory indefinite prison term with a minimum

length of 11 years and a maximum length of 16.5 years. On count two — the failure-to-provide-notice-of-change-of-address charge under R.C. 2950.05(F)(1) — the judge imposed a mandatory definite prison term of 11 years. (The prison terms were mandatory prison terms under R.C. 2929.13(F)(6), which says that a prison term is mandatory for an F1 or F2 offense if the defendant has previously been convicted of an F1 or F2 offense.) The judge then ordered that Kopchak serve the prison terms concurrently.

{¶42} Under R.C. 2929.14(A)(1)(a), indefinite prison terms were required for both offenses rather than just one of them. *See Searls*, 2022-Ohio-858, at ¶ 33 (2d Dist.) ("where the trial court is imposing prison sentences on multiple counts under the Reagan Tokes Act, the trial court's sentence for each individual count should make clear that the prison term is a stated minimum sentence, as opposed to a definite sentence"). Only after selecting individual minimum terms should the judge have turned to R.C. 2929.144(B) to calculate the maximum term in accordance with that latter provision. *See State v. Flow*, 2022-Ohio-4416, ¶ 54 (6th Dist.) ("Pursuant to R.C. 2929.144(B)(2), a sentencing court must first add all of the consecutively imposed terms, in order to determine the aggregate minimum term, and then it must compute the maximum aggregate term").

{¶43} And we note, too, that R.C. 2929.14(A)(1)(a) would still require an individual indefinite sentence on count two even had we affirmed Kopchak's conviction on count one. *See State v. Norman*, 2026-Ohio-761, ¶ 11 (2d Dist.) ("Because this case involves multiple counts under the Reagan Tokes Act, the trial court on remand should impose a minimum prison term for each count and make clear that the term is a stated minimum sentence, as opposed to a definite sentence"); *Searls* at ¶ 32 ("The inclusion of both a minimum and a

calculated maximum totaling 50 percent of the minimum term for the individual offense is proper only when one felony prison term is imposed under the Reagan Tokes Act").

{¶44} Because Kopchak's sentence on the one remaining count — count two — does not comport with Ohio law, we remand Kopchak's case for a resentencing hearing on that one charge.

{¶45} In short, Kopchak's count-one conviction under R.C. 2950.04(E) is vacated, and the case is remanded for a new sentencing hearing on his count-two conviction under R.C. 2950.05(F)(1).  Any court costs are waived.

By: Gormley, J.;

Baldwin, P.J. and

Popham, J. concur.